UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | Case No. 3:17-cr-00025-TMR-3 |
| | : | |
| v. | : | |
| | : | Judge Thomas M. Rose |
| ROBERT CHRISTOPHER GOODSON, | : | |
| | : | |
| Defendant. | : | |

---

**ENTRY AND ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE (DOC. NO. 128)**

---

This case is before the Court on the Motion for Compassionate Release (Doc. No. 128) (the "Motion"), filed by Robert Christopher Goodson ("Goodson"). Goodson is currently incarcerated at Gilmer FCI [Federal Correctional Institution] in West Virginia. He says that he is "seeking compassionate release under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018," and he asks the Court "to release [him] to home confinement for the rest of [his] sentence." (Doc. No. 128 at PageID 638, 640.) For the reasons discussed below, the Court **DENIES** Goodson's Motion.

**I.  BACKGROUND**

On February 16, 2017, the United States of America (the "Government") filed a single-count Indictment against Goodson in this case. (Doc. No. 21.) The Indictment charges Goodson, as well as Donald Smith ("Smith") and Donald Jenkins-Mills ("Jenkins-Mills"), with violating 21 U.S.C. § 846 by conspiring to possess with intent to distribute in excess of 500 grams of a mixture or substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(viii). (*Id.*)

1

On or about December 31, 2018, pursuant to a plea agreement, Goodson pleaded guilty to the offense in the Indictment. (*See* Doc. Nos. 97, 101.) The Statement of Facts attached to the Plea Agreement, signed by Goodson and his attorney, states:

> Beginning on an exact date unknown, but at least by on or about January 17, 2017 and continuing up to and including January 23, 2017, the defendant **ROBERT CHRISTOPHER GOODSON** knowingly, voluntarily and intentionally agreed and conspired with Donald Smith, Donald Jenkins-Mills, and other persons, both known and unknown, to violate certain federal drug laws, to wit: to possess with intent to distribute in excess of 500 grams of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers, a Schedule II controlled substance. There was interdependence among the various members of said conspiracy.
>
> On January 20, 2017, a United Parcel Service (UPS) security official received an anonymous telephone tip advising that certain packages destined for 51 Glenwood Ave. in Dayton, Ohio were believed to contain narcotics contraband. Ultimately, UPS and later law enforcement officials intercepted three parcels. … These parcels were opened by law enforcement pursuant to a state search warrant and two of the parcels were found to contain approximately 6,917 grams of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers. Law enforcement officials thereafter repackaged the three parcels containing in excess of 500 grams of seized methamphetamine, a Court authorized GPS device and electronic sensor.
>
> On January 23, 2017, law enforcement authorities completed a controlled delivery of said parcels to the residence located at 51 Glenwood Ave., Dayton, Ohio. Shortly thereafter, **ROBERT CHRISTOPHER GOODSON** together with Donald Smith and Donald Jenkins-Mills appeared on scene and collected said parcels from the front porch of said residence. The three conspirators thereafter carried the three parcels inside the residence. Within minutes, law enforcement agents entered the residence pursuant to an anticipatory state search warrant and seizing the parcels and apprehending **ROBERT CHRISTOPHER GOODSON**, Donald Smith and Donald Jenkins-Mills.

(Doc. No. 97 at PageID 488-89.)

The Final Presentence Investigation Report ("PSI") regarding Goodson provided additional information about the circumstances of the offense, and it identified approximately nine prior adult criminal convictions and numerous other minor convictions. (PSI ¶¶ 44-53.) Goodson's extensive criminal history includes convictions for possession of heroin, home invasion

and domestic violence, disorderly conduct, delivery or manufacture of less than 50 grams of a controlled substance, domestic violence (again), aggravated stalking, delivery or manufacture of a controlled substance (again), and causing injury while assaulting or resisting or obstructing a police officer. (*Id.*) Additionally, the PSI indicated that Goodson violated probation on a number of occasions, failed to appear for a probation violation, was sentenced to lifetime probation at one point, and absconded from parole on at least two occasions. (*Id.*) The PSI also indicated that Goodson accepted responsibility and showed remorse for committing the offense for which he is currently incarcerated. (*Id.* at ¶ 23.)

At sentencing, the Court imposed a 120-month term of incarceration, five years of supervised release, and a $100 special assessment. (Doc. No. 101.) Goodson is currently 40 years old and has an anticipated release date of August 3, 2025. (*See* FEDERAL BUREAU OF PRISONS INMATE LOCATOR, https://www.bop.gov/inmateloc (last visited January 26, 2022).)

Goodson's appointed counsel filed a Supplement in support of the Motion. (Doc. No. 144.) The Government filed an Opposition to the Motion (Doc. No. 145) (the "Opposition"), in which the Government opposes the relief sought in the Motion. Goodson's counsel did not file a reply, and the time to do so has now passed. (*See* 12/11/2020 Notation Order; Doc. No. 145.) The matter is ripe for review and decision.[1]

---

[1] Section 603(b) of the First Step Act, which was signed into law on December 21, 2018, modified 18 U.S.C. § 3582 to allow a defendant to bring a motion on his or her own behalf either "[1] after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or [2] the lapse of 30 days from the receipt of such request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A); Pub L. No. 115-391, 132 Stat. 5194; *see also United States v. Alam*, 960 F.3d 831, 833-34 (6th Cir. 2020); *United States v. Ruffin*, 978 F.3d 1000, 1004 (6th Cir. 2020) ("defendants now may bring reduction-of-sentence motions on their own once they exhaust any administrative remedies or wait 30 days from the date they request relief from the Bureau of Prisons"). Here, Goodson asserted that he sent the warden a request asking that compassionate release be sought on his behalf, and that request was denied. (Doc. No. 128 at PageID 639.) Although documentation of the request and denial was not provided in the briefing, the Government does not contest exhaustion, so the Court proceeds with the understanding that Goodson could move for compassionate release on his own behalf. *See United States v. Ware*, No. 20-5941, 2021 U.S. App. LEXIS 7405, 2021 WL 3669576, at *1 (6th Cir. Mar. 12, 2021) (the government waived the exhaustion requirement).

## II. ANALYSIS

### A. Legal Standards

Section 3582(c)(1)(A), colloquially known as the "compassionate release" statute, grants authority, in certain limited circumstances, to modify a term of imprisonment after it has been imposed. It provides, in part:

> The court may not modify a term of imprisonment once it has been imposed except that—in any case—the court … may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C.] section 3553(a) to the extent that they are applicable, if it finds that extraordinary and compelling reasons warrant such a reduction … and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A)(i).[2]

Therefore, a court may reduce a defendant's previously imposed term of imprisonment if it finds that three requirements are met: (1) "extraordinary and compelling reasons warrant such a reduction"; (2) the "reduction is consistent with applicable policy statements issued by the Sentencing Commission"; and (3) the § 3553(a) factors, to the extent that they are applicable, support the reduction. 18 U.S.C. § 3582(c)(1)(A)(i); *see also United States v. Lemons*, 15 F.4th 747, 749 (6th Cir. 2021). On the other hand, a court may deny a compassionate release motion when any of the three substantive requirements is lacking and need not address the others.[3] *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021). Moreover, while a court may reduce the term

---

[2] Subpart (ii) of this portion of the statute provides "a separate basis for compassionate release tied to the defendant's age and years in prison." *Ruffin*, 978 F.3d at 1003.

[3] However, courts currently omit the second requirement when an incarcerated person, as opposed to the Bureau of Prisons ("BOP"), files a motion seeking a sentence reduction. *United States v. Lemons*, 15 F.4th 747, 749 (6th Cir. 2021). The Sixth Circuit has explained that, "where incarcerated persons file motions for compassionate release, federal judges may skip step two of the § 3582(c)(1)(A) inquiry"—at least until the Sentencing Commission updates § 1B1.13 of the United States Sentencing Commission Guidelines Manual to reflect the First Step Act. *United States v. Jones*, 980 F.3d 1098, 1009-1111 (6th Cir. 2020) (explaining that passage of the First Step Act rendered § 1B1.13 inapplicable to cases where an imprisoned person files a motion for compassionate release).

4

of imprisonment if all three requirements are met, it "need not do so." *Id.*; *see also* 18 U.S.C. § 3582(c)(1)(A)(i) (stating that a court "may" reduce the term of imprisonment); *United States v. Jones*, 980 F.3d 1098, 1106 (6th Cir. 2020) ("Congress's use of 'may' in § 3582(c)(1)(A) dictates that the compassionate release decision is discretionary, not mandatory").

Regarding the third requirement, "§ 3582(c)(1)(A) instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by steps one and two is warranted in whole or in part under the particular circumstances of the case." *Jones*, 980 F.3d at 1108 (internal quotation marks omitted and alterations adopted).  The factors set forth in Section 3553(a) consider such things as the nature of the offense, the circumstances of the offense, the history of the defendant, the characteristics of the defendant, "and various penological goals, such as the need to promote respect for law and to protect the public," as well as to reflect the seriousness of the offense, provide just punishment for the offense, afford adequate deterrence to criminal conduct, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. *United States v. Ruffin*, 978 F.3d 1000, 1005 (6th Cir. 2020); *see also* 18 U.S.C. § 3553(a); *United States v. Wright*, 991 F.3d 717, 719 (6th Cir. 2021) ("[d]istrict courts may place great weight on one sentencing factor when that weight is warranted") (internal quotation marks omitted).

### B. Application

As referenced above, Goodson says that he is "seeking compassionate release under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018," and he asks the Court "to release [him] to home confinement for the rest of [his] sentence." (Doc. No. 128 at PageID 638, 640.)  Goodson argues that he has "had asthma for as long as [he] can remember" and that, "due to the recent pandemic (COVID-19)," he is "an instant candidate to contract and suffer from" COVID-19 in the prison setting.  (*Id.* at PageID 638.)  Goodson also says that "he is experiencing

5

major soreness, aches and pains in his legs and arms" that he believes "may be a symptom of Covid-19 but is afraid to be tested." (Doc. No. 144 at PageID 681.) He further asserts that, "[d]espite the BOP's efforts to test and protect us as inmates, COVID-19 is spreading within [the prison] quickly and [his] medical condition places [him] at risk of severe illness and[/]or possibly death." (Doc. No. 128 at PageID 639.) He also says that he has served 46 months of his sentence, his "offensive conduct was certainly serious in its nature but it didn't involve any violence," he has attended drug counseling and vocational training classes while incarcerated, he has a job waiting for him if released (although he provides no further details), and he has "been compliant and most of all respectful to" BOP staff. (*Id.* at PageID 639-40; Doc. No. 144 at PageID 681.) In the Supplement, Goodson's counsel indicated that "the Covid-19 vaccine was available to [Goodson] but he has not elected to take the Covid-19 vaccine due to lack of information regarding the effects of the vaccine and due to his fear of the vaccine." [4] (Doc. No. 144 at PageID 681.)

In response, the Government argues that the Court should deny the Motion. (Doc. No. 145.) First, the Government points out that "[t]his Court does not have authority to grant a transfer to home confinement." (*Id.* at PageID 687.) Second, the Government explains that, although Goodson "asserts that he suffers from asthma which is identified by the CDC as a risk factor," "there have been no BOP records submitted with [the] subject motion that establish that this defendant presents such an aggravated condition." (*Id.* at PageID 695.) Additionally, the Government argues that the Motion should be denied because Goodson has not established "extraordinary and compelling" reasons that would warrant a sentence reducing, and because the

---

[4] This arguably constitutes another reason to deny the Motion. *See Lemons*, 15 F.4th at 751 (defendant's "access to the COVID-19 vaccine substantially undermines his request for a sentence reduction"); *United States v. Brownlee*, No. 21-2591, 2022 U.S. App. LEXIS 348, 2022 WL 35404, at *2 (6th Cir. Jan. 4, 2022) (affirming the district court's denial of defendant's motion for compassionate release where the district court had determined that the existence of COVID-19 and the possibility defendant could contract the disease did not present "extraordinary and compelling reasons" under § 3582(c)(1)(A) given that the defendant failed to mitigate the danger to his health and safety by refusing the vaccine).

6

§ 3553(a) factors weigh against the request. (*Id.* at PageID 695-706.) The Government contends that, based on Goodson's "prior drug trafficking history, he continues to be a clear and present danger to the local community," as well as that Goodson "fails to demonstrate how release from the balance of his 120-month sentence for a second serious drug trafficking conspiracy crime[] reflects the seriousness of the offense, promotes respect for the law, and provides just punishment for the offense." (*Id.* at PageID 686, 705.)

1. Lack of authority to grant requested relief

Goodson requests that the Court "release [him] to home confinement for the rest of [his] sentence." (Doc. No. 128 at PageID 640.) This amounts to asking the Court to change the place where his sentence will be served (from Gilmer FCI to his home), without reducing the term of his sentence. However, it is the BOP, not the courts, that has the authority to determine the place of a defendant's confinement. The CARES Act did not change this fact. 18 U.S.C. § 3621(b) ("The Bureau of Prisons shall designate the place of the prisoner's imprisonment …"); CARES Act, Pub. L. No. 116-136, at Div. B., Title II, § 120003(b)(2); *United States v. Brummett*, No. 20-5626, 2020 U.S. App. LEXIS 26427, 2020 WL 5525871, at *2 (6th Cir. Aug. 19, 2020) ("to the extent that [the defendant prisoner] sought relief under the CARES Act, the district court correctly held that the authority to grant home confinement remains solely with the Attorney General and the BOP"); *see also United States v Spencer*, No. 20-3721, 2020 U.S. App. LEXIS 28051, 2020 WL 5498932, at *2 (6th Cir. Sept. 2, 2020) ("Section 3582(c)(1)(A) does not authorize the district court to order that a defendant serve his current sentence in home confinement," but, if the court "reduces a defendant's sentence under § 3582(c)(1)(A) to time served, [then] it can impose a term of supervised release equal to the unserved time and order, as a condition of that supervised release, that the defendant be confined to his home"). Therefore, the Motion must be denied. *See United States v. Minor*, No. 3:18-cr-164-TMR-2, 2020 U.S. Dist. LEXIS 91345, 2020 WL 2736679, at

7

*1, 3 (S.D. Ohio May 26, 2020) (denying motion seeking immediate release to home confinement pursuant to the CARES Act).

### 2. Failure to provide supporting records

Second, even assuming that Goodson is seeking a reduction of his sentence under § 3582(c)(1)(A) to time served (with an imposed term of supervised release, equal to his unserved time, where he would be confined to his home), the Court would deny the Motion because Goodson failed to provide records to support his claimed medical ailment. *United States v. Green*, No. 3:17-CR-00189, 2021 U.S. Dist. LEXIS 49871, 2021 WL 1020412, at *6 (S.D. Ohio Mar. 17, 2021) ("[a] district court may deny a motion for compassionate release if the movant fails to provide any records in the motion to support his or her claimed medical ailment(s) that form the basis for arguing 'extraordinary and compelling reasons' warrant a reduction in the term of imprisonment"); *Elias*, 984 F.3d at 520-21 (because movant "did not provide any records in her motion to support that she had hypertension[,] [t]he district court could have denied [the] motion for compassionate release on th[at] basis"); *United States v. Tomes*, 990 F.3d 500, 504 (6th Cir. 2021) (explaining that, although the defendant said in his compassionate release motion that he has chronic asthma (which increases the risk of serious illness from COVID-19), the district court could have denied the motion because he did not provide any records in his motion to support that he has chronic asthma).

Despite mentioning medical records (*see* Doc. No. 144 at PageID 681), neither Goodson nor his counsel provided any records to the Court in support of the Motion. (*See* Doc. Nos. 128, 130, 144.) The Government even pointed this out in its Opposition, yet Goodson still did not provide any records to the Court. This is an additional basis for denying the Motion.

8

### 3. Analysis of § 3582(c)(1)(A) requirements

Third, even if Goodson had provided the Court with records supporting his asserted medical ailment <u>and</u> assuming that Goodson is seeking a reduction of his sentence under § 3582(c)(1)(A) to time served (with an imposed term of supervised release, equal to his unserved time, where he would be confined to his home), the Court would not find that the three requirements for such relief have been met. More specifically, consideration of the Section 3553(a) factors, to the extent that they are applicable, do not support such a reduction of Goodson's sentence.

Regarding the first § 3582(c)(1)(A) requirement, for the purposes of the Court's analysis, the Court will <u>assume</u>—without deciding—that Goodson has demonstrated an extraordinary and compelling reason for reducing the term of imprisonment.[5] Regarding the second § 3582(c)(1)(A) requirement, given that Goodson (an incarcerated person) filed the Motion, the Court "may skip"—and does skip—this step, in accordance with the Sixth Circuit's *Jones* decision. *Jones*, 980 F.3d at 1111.

Regarding the third requirement, the Court has considered the parties' arguments and the Section 3553(a) factors to the extent that they are applicable. 18 U.S.C. § 3582(c)(1)(A)(i). This includes that the Court considered Goodson's history and characteristics, such as his asserted behavior in prison, rehabilitation efforts, and educational or vocational training while incarcerated. *See* 18 U.S.C. § 3553(a)(1). Goodson also accepted responsibility for his actions. And, the Court

---

[5] The Court emphasizes it has <u>not</u> actually found that any circumstance (separately or combined) alleged by Goodson qualifies as an "extraordinary and compelling reason[] [that] warrant[s] a reduction" of his sentence. 18 U.S.C § 3582(c)(1)(A)(i). As shown herein, the Court need not actually conduct that analysis to decide the Motion. *See, e.g., Jones*, 980 F.3d at 1108 (affirming district court's decision, which had "assumed for the sake of argument that extraordinary and compelling reasons existed" to reduce the defendant's term of imprisonment, proceeded to weigh several § 3553(a) factors, and then denied the motion for compassionate release).

9

acknowledges the challenging conditions at Gilmer FCI during the current COVID-19 pandemic and Goodson's (alleged) health issue. *See* 18 U.S.C. § 3553(a)(1), (a)(2)(B), (a)(2)(D).

Yet, the "nature and circumstances of the offense" do not favor early release. *See* 18 U.S.C. § 3553(a)(1); *see also United States v. Jenkins-Mills*, No. 3:17-cr-25-TMR-2, 2020 U.S. Dist. LEXIS 194652, 2020 WL 6146418, at *5 (S.D. Ohio Oct. 20, 2020) (finding that the Section 3553(a) factors weighed against releasing Goodson's co-conspirator early). The offense for which Goodson is currently incarcerated involved relatively large quantities of methamphetamine. *See United States v. Crabtree*, No. 3:17-cr-146, 2021 U.S. Dist. LEXIS 208959, 2021 WL 5040259, at *6 (S.D. Ohio Oct. 29, 2021) (methamphetamine is a dangerous, potentially lethal, controlled substance). Additionally, Goodson's criminal history is extensive and includes prior convictions involving controlled substances, home invasion, domestic violence, stalking, and assaulting a police officer. (PSI at ¶¶ 44-52.) Furthermore, Goodson has a history of violating post-incarceration conditions. (*Id.* at ¶ 50; *see also id.* at ¶¶ 44, 45, 47 (evidencing probation violations).) All of this greatly concerns the Court. *See* 18 U.S.C. §3553(a)(1), (a)(2)(A), (a)(2)(B), (a)(2)(C), (a)(6). The Court finds that the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence to criminal conduct, and protect the public from further crimes of the defendant do not favor early release. *See* 18 U.S.C. § 3553(a)(2)(A)-(C). Furthermore, Goodson still has a substantial amount of his sentence remaining. *See* 18 U.S.C. § 3553(a)(2)(A), (a)(2)(B), (a)(6); *Ruffin*, 978 F.3d at 1008 (considering the amount of the sentence defendant had served); *United States v. Kincaid*, 802 F. App'x 187, 188 (6th Cir. 2020) ("the need to provide just punishment, the need to reflect the seriousness of the offense, and the need to promote respect for the law permit the court to consider the amount of time served in determining whether a sentence modification is

appropriate"). Releasing Goodson with so much time remaining on his sentence would minimize the impact of his crime and the seriousness of his offense. *Id.*

Having considered the factors set forth in Section 3553(a) to the extent that they are applicable, the Court finds that reducing the term of imprisonment to time served would not be warranted. Thus, even if the first two requirements are met, the Court finds that consideration of the applicable Section 3553(a) factors would not support granting a reduction. *Ruffin*, 978 F.3d at 1008 (the Sixth Circuit has "repeatedly recognized that district courts may deny relief under the § 3553(a) factors even if 'extraordinary and compelling' reasons would otherwise justify relief"); *Jones*, 980 F.3d at 1102 (affirming decision to deny motion for compassionate release where "the district court found for the sake of argument that an extraordinary and compelling circumstance existed in [defendant's] case but that the § 3553(a) factors counseled against granting compassionate release"); *Wright*, 991 F.3d at 720 (affirming denial of compassionate release motion despite defendant's "recent remorse, health problems, and rehabilitative efforts" where it "found that other considerations—such as his criminal history and disciplinary violations— outweighed these factors").

### III. <u>CONCLUSION</u>

The Court cannot grant Goodson's requested relief. Additionally, even if it construes Goodson's request as seeking a reduction of his sentence under § 3582(c)(1)(A) to time served (with an imposed term of supervised release, equal to his unserved time, where he would be confined to his home), the Court would deny the Motion because Goodson failed to provide records to support his claimed medical ailment. The Court would also find that the circumstances here do not warrant a reduction in the term of imprisonment pursuant to § 3582(c)(1)(A). For the reasons stated above, the Court **DENIES** the Motion for Compassionate Release (Doc. No. 128).

**DONE** and **ORDERED** in Dayton, Ohio, this Friday, January 28, 2022.

                                                                                         s/Thomas M. Rose

                                                            _____
                                                                       THOMAS M. ROSE
                                                         UNITED STATES DISTRICT JUDGE